**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNAP TECHNOLOGY SOLUTIONS INC., *et al.* | Case No. 20-22393 (RDD) |
| Debtors.[1] | Jointly Administered |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS**
**(A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE**
**CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO**
**PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the DIP Financing Motion[2] of Internap Technologies Solutions Inc. and its affiliated

debtors, each as a debtor and debtor in possession (collectively with Internap Technologies

Solutions Inc., the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") before the

United States Bankruptcy Court for the Southern District of New York (the "Court"), pursuant to

sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 507, and 552 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Internap Technology Solutions Inc. (8343); Internap Corporation (5721); Ubersmith, Inc. (7677); SingleHop, LLC (4340); Internap Connectivity LLC (7920); Hosting Intellect, LLC (8435); and DataGram, LLC (3170). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

[2] Unless otherwise specified, all capitalized terms used but not defined herein shall have the respective meanings given such terms in the *Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* dated March 17, 2020 (the "DIP Financing Motion") or the DIP Credit Agreement (as defined below), as applicable.

9006-1, 9013-1, 9014-1, and 9014-2 of the local bankruptcy rules for the Southern District of New York (the "Local Bankruptcy Rules") seeking, among other things:

(a)        authorization for Internap Corporation, in its capacity as borrower (the "Borrower"), to obtain postpetition financing (the "New Money DIP Facility"), and for each of the other Debtors to guarantee unconditionally (the "Guarantors"), on a joint and several basis, the Borrower's obligations in connection with the DIP Facility, consisting of a superpriority senior secured term loan credit facility in the aggregate principal amount of up to $75 million (the "DIP Loans"), comprised of (i) $70 million of new money (the "DIP New Money Loans") and (ii) a roll up (the "DIP Roll-Up Loans") of the $5 million in outstanding New Incremental Loans (as defined below), in accordance with the terms and conditions set forth in the DIP Credit Agreement (as defined below) and all other terms and conditions of the DIP Facility Documents (as defined below) upon entry of this order (the "Final Order").

(b)        authorization for the Debtors to enter into that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement among the Borrower, the Guarantors, certain of the Prepetition Secured Lenders (as defined below) (the "DIP Lenders"), and Jefferies Finance LLC (in such capacity, the "DIP Agent" and, together with the DIP Lenders, the "DIP Secured Parties") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement;"[3] and together with the Interim Order, this Final Order, and all agreements, documents, and instruments delivered or executed in connection therewith (including the fee letters executed in connection with the DIP Facility (including the DIP Agent

---

[3]    Provided, that all references to the DIP Credit Agreement in this Final Order, including the Court's final approval thereof, assume the deletion of any Events of Default thereunder based on a non-Debtor third party's request to terminate the Debtors' exclusive periods to file or solicit acceptances of a chapter 11 plan, the grant of such a request, or the filing or confirmation of a chapter 11 plan unless such plan or plans does not provide for the termination of the Commitments and indefeasible payment in full in cash of all Obligations under such Agreement on or before the effective date of such plan or plans.

fee letter)), and other guarantee and security documentation, collectively, the "DIP Facility Documents"), and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(c)      authorization for the Debtors to use the DIP Loans, the proceeds thereof, and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), in accordance with the DIP Budget (subject to permitted variance set forth in the DIP Credit Agreement) in form and substance reasonably acceptable to the Required DIP Lenders, to provide working capital for, and for other general corporate purposes of, the Debtors, including for payment of any Adequate Protection Obligations (as defined below) and reasonable and documented transaction costs, fees, and expenses incurred in connection with the restructuring to be implemented through the Chapter 11 Cases.

(d)      the granting of adequate protection to the Prepetition Secured Parties (as defined below), under that certain Credit Agreement, dated as of April 6, 2017 (as amended and restated, waived, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement" and, together with all related collateral and security documents, the "Prepetition Credit Documents"), by and among Internap Corporation, as the borrower, the guarantors party thereto, the lenders party thereto (the "Prepetition Secured Lenders"), Jefferies Finance LLC, as administrative agent and collateral agent (in its capacity as administrative agent and collateral agent, the "Prepetition Agent" and, together with the Prepetition Secured Lenders, the "Prepetition Secured Parties");

(e)      the granting of valid, enforceable, binding, non-avoidable and fully perfected first priority priming liens on and senior security interests in substantially all of the property, assets and other interests in property and assets of the Debtors, whether such property is presently owned or

after-acquired, and each Debtor's "estate" as created by Bankruptcy Code section 541, of any kind

or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter

acquired or created, whether existing prior to or arising after the Petition Date (as defined below),

subject only to the (x) Carve-Out (as defined below),  (y) Permitted Liens (as defined in the DIP

Credit Agreement) and (z) other valid and unavoidable liens perfected prior to the Petition Date

(or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b))

on the terms and conditions set forth herein and in the DIP Facility Documents;

(f)    the granting of superpriority administrative expense claims against each of the

Debtors' estates to the DIP Agent and the DIP Lenders with respect to the DIP Obligations (as

defined below) over any and all administrative expenses of any kind or nature subject and

subordinate only to the payment of the Carve-Out on the terms and conditions set forth herein and

in the DIP Facility Documents;

(g)    the waiver of the Debtors' and the estates' right to surcharge against the Prepetition

Collateral pursuant to Bankruptcy Code section 506(c);

(h)    authorization for the DIP Agent, the DIP Lenders and the Prepetition Secured

Parties to be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and for

the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to such

parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition

Collateral or the DIP Collateral, as applicable;

(i)    pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing")

on the DIP Financing Motion be held before this Court to consider entry of an interim order (the

"Interim Order"), among other things, (1) authorizing Debtors, on an interim basis, to borrow from

the DIP Lenders a principal amount of up to $70 million in DIP New Money Loans and to convert

the DIP Roll-Up Loans; (2) authorizing the Guarantors to guaranty the DIP Obligations, (3) authorizing the Debtors' use of Prepetition Collateral (including Cash Collateral), (4) granting the adequate protection described in the Interim Order, and (5) authorizing the Debtors to execute and deliver the DIP Facility Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

(j)      that this Court schedule a final hearing (the "Final Hearing") to consider entry of the Final Order authorizing, among other things, Debtors, on a final basis, to borrow from the DIP Lenders under the DIP Facility Documents up to an aggregate principal amount not to exceed $70 million in New Money DIP Loans, and the continued use of Cash Collateral, as set forth in the DIP Financing Motion and the DIP Facility Documents;

(k)      notice of the DIP Financing Motion, the relief requested therein and the Final Hearing having been served by the Debtors in accordance with the Order Implementing Certain Notice and Case Management Procedures [D.I. 44] (the "Case Management Order");

(l)      the Final Hearing having been held by this Court on May 4, 2020; and

(m)      upon the record at the interim hearing and the Final Hearing, and upon the Court's consideration of the DIP Financing Motion, the exhibits thereto; *the Declaration of Michael T. Sicoli in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the *Declaration of Adam B. Keil in Support of the DIP Financing Motion* (the "Keil Declaration"), and all of the proceedings herein; and after due deliberation and consideration and sufficient cause appearing therefor,

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.      *Petition Date.*  On March 16, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.  The Debtors are continuing to operate their businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      *Jurisdiction.*  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Financing Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b) that this Court may decide by a final order consistent with Article III of the United States Constitution.  No trustee or examiner has been appointed for any Debtor.

C.      *No Committee.*  As of the date hereof, the U.S. Trustee has not appointed any statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

D.      *Notice.*  Timely, adequate, and sufficient notice of the DIP Financing Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules 4001(b) and (c), the Local Rules, and the Case Management Order, and no other or further notice of the DIP Financing Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

---

[4]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute findings of fact, they are adopted as such.

E. *Debtors' Stipulations*. Without prejudice to the rights of any other non-Debtor party-in-interest with standing on behalf of the Debtors' estates, but subject to the limitations thereon contained in Paragraphs 20 and 21 of this Final Order, the Debtors represent, admit, stipulate, and agree as follows:

(a) <u>Prepetition Obligations</u>. As of the Petition Date, the Debtors, without defense, counterclaim, or offset of any kind were jointly and severally indebted and liable to the Prepetition Secured Parties under the Prepetition Credit Documents in the aggregate amount of approximately $461.4 million in principal amount outstanding borrowings under the Prepetition Credit Agreement (the "<u>Prepetition Obligations Amount</u>"), of which $5 million was borrowed on March 13, 2020 pursuant to that certain Incremental and Eighth Amendment to the Prepetition Credit Agreement (the "<u>New Incremental Loans</u>") plus any additional accrued and unpaid interest, premium, if any, and certain fees, costs, expenses, indemnification obligations, charges, and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Prepetition Credit Documents (collectively, including the Prepetition Obligations Amount, the "<u>Prepetition Obligations</u>").

(b) <u>Prepetition Liens and Prepetition Collateral</u>. As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtors granted the Prepetition Agent, for the benefit of itself and the Prepetition Secured Lenders, first priority liens on and security interests (the "<u>Prepetition Liens</u>") in certain of their assets and property, including, without limitation, a first priority security interest in and a continuing lien on the "Collateral" under and as defined in the Prepetition Credit

Documents (collectively, the "Prepetition Collateral").  The Prepetition Liens (i) are valid, binding, perfected, and enforceable first priority liens and security interests in the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date, are subject and/or subordinate only to valid, perfected, and unavoidable liens and security interests existing as of the Petition Date that are senior in priority to the Prepetition Liens as permitted by the terms of the Prepetition Credit Documents, and (iv) constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable Prepetition Credit Documents.

(c)    No Claims.  The Debtors have no valid Claims, counterclaims, cross-claims, recoupments, causes of action, defenses or setoff rights against any of the Prepetition Secured Parties with respect to the Prepetition Loan Documents, whether arising at law or at equity, including, without limitation, any recharacterization, subordination (whether equitable or otherwise), avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code or any theory of "lender liability" under applicable state law or otherwise.

(d)    Cash Collateral.  Any and all of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds

of any of the foregoing is the Prepetition Secured Parties' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

(e) *Bank Accounts.* The Debtors acknowledge and agree that as of the Petition Date, each of the Debtors has neither opened nor maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order").

F.    *Findings Regarding the DIP Facility and Use of Cash Collateral.*

(a) The Debtors have an immediate need to obtain the DIP Facility and to use the Cash Collateral (solely to the extent consistent with the DIP Budget (subject to permitted variances as set forth in this Final Order and the DIP Facility Documents)) to, among other things, (i) permit the orderly continuation of their businesses; (ii) pay certain Adequate Protection Obligations; and (iii) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors. Specifically, the proceeds of the DIP New Money Loans will provide the Debtors with the ability to fund day-to-day operations and meet administrative obligations during the Chapter 11 Cases. The DIP Facility will also reassure the Debtors' customers and employees that the Debtors will have access to additional liquidity to meet its commitments during these Chapter 11 Cases and that the Debtors' businesses are likely to continue as a going concern post-emergence. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern values and successful reorganization. The

Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business throughout the Chapter 11 Cases without access to the DIP Facility and authorized use of Cash Collateral.

(b)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.    The Debtors also are unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the DIP Facility Documents without the Debtors granting to the DIP Secured Parties, subject to the Carve-Out as provided for herein, the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and the DIP Facility Documents.

(c)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Facility Documents including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Facility Documents and all other obligations under the DIP Facility Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in Bankruptcy Code section 364(e) and in express reliance upon the protections offered by Bankruptcy Code section 364(e).    The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed, or

modified on appeal or otherwise, and any liens or claims granted to, or payments made to the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(d)    *Roll-Up of Loans.*    Upon entry of the Interim Order, without any further action by the Debtors or any other party, the New Incremental Loans were converted into DIP Obligations as DIP Roll-Up Loans.  Such conversion (or "roll-up") was and is authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Lenders that are also DIP Lenders or affiliates thereof to fund the DIP New Money Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP New Money Loans or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Loans in the DIP Obligations.

(e)    This Final Order shall take effect and be fully enforceable immediately upon execution hereof.  Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.

(f)    *Sections 506(c) and 552(b).*    In light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and Carve Out, and to permit the use of their Cash Collateral as set forth herein, the Prepetition Agent and the other Prepetition Secured Parties are entitled to the rights and

benefits of section 552(b) of the Bankruptcy Code and (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(g)    *Consent by Prepetition Agents*.  The Prepetition Agent (at the direction of the required lenders as set forth in the Prepetition Credit Agreement), on behalf of and for the benefit of each of the Prepetition Secured Parties, has consented to, conditioned on the entry of this Final Order, the Debtors' incurrence of the DIP Facility and proposed use of Cash Collateral on the terms and conditions set forth in this Final Order, and the terms of the adequate protection provided for in this Final Order, including that the Adequate Protection Liens and Adequate Protection Superpriority Claim are subject and subordinate to the Carve Out.

G.    *Good Cause Shown*.  Good cause has been shown for the entry of this Final Order, and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.  Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.

**IT IS HEREBY ORDERED that:**

1.    *DIP Financing Motion Approved*.  The DIP Financing Motion is GRANTED on an final basis in accordance with the terms of this Final Order.  Any objections to the DIP Financing Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservation of rights with respect to the entry of this Final Order pursuant to the

DIP Financing Motion included in any objections or otherwise asserted, are hereby denied and overruled.

     2.    *Authorization of the DIP Facility and the DIP Facility Documents.*

     (a)    The Debtors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Facility Documents, and such additional documents, instruments, certificates, and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this Final Order and the DIP Facility Documents. To the extent not entered into as of the date hereof, the Debtors shall negotiate the DIP Facility Documents in good faith and in all respects such DIP Facility Documents shall be consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Agent and the Required DIP Lenders. Upon execution and delivery thereof, the DIP Facility Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the DIP Financing Motion, the DIP Facility Documents, and this Final Order, the terms and conditions of this Final Order shall govern and control. To the extent there is a conflict between the terms and conditions of the DIP Financing Motion and the DIP Facility Documents, the terms and conditions of the DIP Facility Documents shall govern.

     (b)    Upon entry of this Final Order, the Borrower is hereby authorized to (i) borrow, and the Guarantors are hereby authorized to guaranty, borrowings up to an aggregate principal amount of $70 million in DIP Loans, subject to and in accordance with this Final Order and (ii) continue to be obligated under the DIP Roll-Up Loans and, without any further action by the Debtors or any other party, and as a condition to providing the

DIP Loans, the DIP Roll-Up Loans were pursuant to the Interim Order and shall continue to be included in the DIP Obligations. Notwithstanding anything in this Final Order to the contrary and consistent with Local Rule 4001-2, the authorization herein and in the Interim Order to incur the DIP Roll-Up Loans is subject to any timely and successful Challenge (as defined below) to (x) that portion of the Prepetition Obligations underlying such DIP Roll-Up Loans or (y) the Prepetition Liens securing that portion of the Prepetition Obligations.

(c)    In accordance with the terms of this Final Order and the DIP Facility Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Facility Documents and this Final Order, and in accordance with the DIP Budget (as defined in the DIP Credit Agreement); subject to permitted variances as set forth in this Final Order and the DIP Facility Documents.

(d)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary, to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby, or the DIP Credit Agreement), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Facility Documents), that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility including, without limitation:

(i)     the execution, delivery, and performance of the DIP Facility Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby;

(ii)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Facility Documents (in each case in accordance with the terms of the applicable DIP Facility Documents and in such form as the Debtors, the DIP Agent, and the Required DIP Lenders may agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Facility Documents or the DIP Obligations that do not have the effect of shortening the maturity of the extensions of credit thereunder or modifying the commitments or the rate of interest payable thereunder;

(iii)   the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP Facility Documents, including (x) all fees and other amounts owed to the DIP Agent and the DIP Lenders and (y) all reasonable costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Facility Documents and this Final Order (including, for the avoidance of doubt, (a) Gibson, Dunn & Crutcher (as counsel) and Rothschild & Co. (as financial advisor) to the DIP Lenders and the Prepetition Secured Parties; and (b) Jones Day (as counsel) to the DIP Agent

and the Prepetition Agent, which such fees and expenses shall not be subject

to the approval of the Court, nor shall any recipient of any such payment be

required to file with respect thereto any interim or final fee application with

the Court, _provided_ that any fees and expenses of a professional shall be

subject to the provisions of paragraph 20 of this Final Order; and

(iv)    the performance of all other acts required under or in connection with the

DIP Facility Documents.

(e)    Upon execution and delivery of the DIP Facility Documents, such DIP

Facility Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding,

and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto

in accordance with their respective terms and the terms of this Final Order for all purposes

during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor

to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Chapter 11

Case.  Subject to the last sentence of paragraph 2.b. hereof, no obligation, payment, transfer

or grant of security under the DIP Credit Agreement, the other DIP Facility Documents or

this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the

Bankruptcy Code or under any applicable law (including without limitation, under

Bankruptcy Code sections 502(d), 548, or 549 or under any applicable state Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or

common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.

Subject to the last sentence of paragraph 2.b. hereof and, with respect to the Prepetition

Secured Parties, paragraph 22 hereof, all payments or proceeds remitted (a) to or on behalf

of the DIP Agent on behalf of any DIP Secured Parties or (b) to or on behalf of the

16

Prepetition Secured Parties, in each case pursuant to the DIP Facility Documents, the provisions of this Final Order or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

(f)     The Guarantors hereby are authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Final Order shall be deemed to have guaranteed in full all of the DIP Obligations of the Borrower.

3.     *Reporting Requirements/Access to Records*.  The Debtors shall provide the advisors to the Prepetition Secured Parties with all reporting and other information required to be provided to the DIP Agent under the DIP Facility Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Facility Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties to: (i) have access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records; and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

4.     *DIP Superpriority Claims*.  Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "DIP Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative

expenses or other claims arising under Bankruptcy Code sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b) and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions"), subject only to the payment of the Carve-Out to the extent specifically provided for herein.  Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

5.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Final Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a) and (b) below being collectively referred to as the "DIP Collateral"), subject to   (x) the Permitted Liens (as defined in the DIP Credit Agreement), (y) payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Facility Documents, the "DIP Liens"), and (z) the last sentence of paragraph 2.b. hereof:

(a)    First Priority Lien On Any Unencumbered Property.    Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)), including, without limitation, a 100% equity pledge of any first-tier foreign subsidiaries; unencumbered cash of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests (including equity interests in subsidiaries of each Debtor), money, investment property, intercompany claims, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date, causes of action, including causes of action arising under Bankruptcy Code section 549 (but excluding all other Avoidance Actions), all products and proceeds of the foregoing and all proceeds and property recovered in respect of Avoidance Actions; provided, for the

avoidance of doubt and notwithstanding anything to the contrary contained herein, with respect to non-residential leases of real property, unless the applicable lease expressly permits the granting of liens on such lease, the liens granted pursuant to this Final Order shall attach solely to the Debtors' interests in the proceeds of such lease and not to the subject lease itself.

(b)    <u>Liens Priming the Prepetition Liens</u>.  Pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all property of the Debtors that was subject to the Prepetition Liens including, without limitation, the Prepetition Collateral and Cash Collateral; <u>provided</u> that such liens shall be immediately junior to any valid, perfected, and unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Prepetition Secured Parties as permitted by the terms of the Prepetition Credit Documents; <u>provided</u>, <u>further</u>, for the avoidance of doubt and notwithstanding anything to the contrary contained herein, with respect to non-residential leases of real property, unless the applicable lease expressly permits the granting of liens on such lease, the liens granted pursuant to this Final Order shall attach solely to Debtors' interests in the proceeds of such lease and not to the subject lease itself.

6.    *Adequate Protection for the Prepetition Secured Parties*.  Subject only to the Carve-Out and the terms of this Final Order, pursuant to Bankruptcy Code sections 361, 363(e), and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for and equal in amount to the aggregate postpetition diminution in value of such interests (each such diminution, a "<u>Diminution in Value</u>"), resulting from, among other things, the imposition of the priming DIP

Liens on the Prepetition Collateral, the Carve-Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens.  As security for and solely to the extent of any Diminution in Value, additional and replacement valid, binding, enforceable non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Final Order (the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral and if authorized in the Final Order, all proceeds or property recovered from Avoidance Actions.  Subject to the terms of this Final Order, the Adequate Protection Liens shall be subordinate only to the (A) Carve-Out, (B) the DIP Liens, and (C) other valid, perfected and unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Prepetition Secured Parties as permitted by the terms of the Prepetition Credit Documents.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551).

(b)    Adequate Protection Superpriority Claims.  As further adequate protection, and to the extent provided by Bankruptcy Code sections 503(b) and 507(b), allowed administrative expense claims in each of the Chapter 11 Cases ahead of and senior to any

and all other administrative expense claims in such Chapter 11 Cases to the extent of any

postpetition Diminution in Value (the "Adequate Protection Superpriority Claims"), but

junior to the Carve-Out and the DIP Superpriority Claims.  Subject to the Carve-Out and

the DIP Superpriority Claims in all respects, the Adequate Protection Superpriority Claims

will not be junior to any claims and shall have priority over all administrative expense

claims against each of the Debtors, now existing or hereafter arising, of any kind or nature

whatsoever, including, without limitation, administrative expense claims of the kinds

specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365,

503(a), 503(b), 506(c), 507(a), 507(b), 546(d), 726, 1113 and 1114.  The Prepetition

Secured Parties shall not receive or retain any payments, property or other amounts in

respect of the Adequate Protection Superpriority Claims under Bankruptcy Code section

507(b) granted hereunder unless and until the DIP Obligations have been indefeasibly paid

in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders,

in each case as provided in the DIP Facility Documents.

(c)    Fees and Expenses.  As further adequate protection, the Debtors are

authorized and directed to pay, in accordance with the terms of paragraph 20 of this Final

Order, all reasonable and documented fees and expenses (the "Adequate Protection Fees"),

whether incurred before or after the Petition Date, including all reasonable and documented

fees and expenses of counsel and other professionals retained as provided for in the DIP

Facility Documents and this Final Order, including, for the avoidance of doubt, of

(a) counsel (Gibson, Dunn & Crutcher) and financial advisor (Rothschild & Co.) for the

DIP Lenders and the Prepetition Secured Parties and (b) counsel (Jones Day) for the DIP

Agent and Prepetition Agent.  None of the Adequate Protection Fees shall be subject to

separate approval by this Court or the U.S. Trustee Guidelines and no recipient of any such

payment shall be required to file any interim or final fee application with respect thereto or

otherwise seek the Court's approval of any such payments.

7.      *Carve-Out*.

(a)      <u>Priority of Carve-Out</u>.  Subject to the terms and conditions contained in this

Paragraph 7, each of the DIP Liens, DIP Superpriority Claims, Prepetition Liens, Adequate

Protection Liens, and Adequate Protection Superpriority Claims shall be subject and

subordinate to payment of the Carve-Out (as defined below).  The Carve-Out shall have

such priority over all assets of the Debtors, including any DIP Collateral, Prepetition

Collateral, and any funds in the escrow account into which the DIP New Money Loans are

funded.

(b)      <u>Definition of Carve-Out</u>.  As used in the Final Order, "<u>Carve-Out</u>" shall

mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office

of the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to

31 U.S.C. § 3717 without regard to the notice set forth in (iii) (below); (ii) all reasonable

fees and expenses up to $100,000 incurred by a trustee under Bankruptcy Code

section 726(b) without regard to the notice set forth in (iii) (below); (iii) to the extent

allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid

fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained

by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor</u>

<u>Professionals</u>") and any official committee appointed in these Chapter 11 Cases

(the "<u>Committee</u>"), pursuant to section 328 or 1103 of the Bankruptcy Code (the

"<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional</u>

Persons") at any time before or on the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice (as defined below) (such amounts in this provision (iii), the "Pre-Trigger Notice Professional Fees"); and (iv) after the date of delivery of the Carve-Out Trigger Notice (as defined below) (the "Trigger Date"), Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,000,000 incurred after the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  Any transaction or success fee shall not be included in the Carve-Out, unless otherwise earned by such Professional Person prior to the Trigger Date or earned pursuant to the applicable Professional Person's engagement letter notwithstanding the Trigger Date.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent (at the direction of the Required DIP Lenders) by email (or other electronic means) to the Debtors and their lead restructuring counsel, counsel to the DIP Lenders and the Prepetition Secured Parties, the U.S. Trustee, and lead counsel to any Committee appointed in these Chapter 11 Cases, which notice may be delivered (at the direction of the Required DIP Lenders) following the occurrence and during the continuation of an Event of Default under the DIP Facility and acceleration of the DIP Obligations (including events of default resulting from defaults under the Interim Order or Final Order, as applicable), stating that the Post-Carve Out Trigger Notice Cap is invoked.

(c)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  None of the DIP Agent, DIP Lenders, or the Prepetition Agent or Prepetition Secured Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in the DIP Orders or otherwise shall be construed to obligate the DIP Secured Parties, or the Prepetition Agent or Prepetition Secured Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    <u>Payment of Carve-Out On or After Delivery of a Carve-Out Trigger Notice</u>. Any payment or reimbursement made on or after the occurrence of the delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve-Out Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the DIP Orders, the DIP Facility Documents, the Bankruptcy Code, and applicable law.

8.    *Limitation on Charging Expenses Against Collateral*.    No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the DIP Collateral (except to the extent of the Carve-Out), the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Parties pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of

law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Secured Lenders.

9.      *No Marshaling/Application of Proceeds*.  The DIP Agent and the Prepetition Agent shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral in accordance with the provisions of the DIP Facility Documents and the Prepetition Credit Documents, as applicable, and, subject to the Carve-Out, in no event shall the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.

10.      *Equities of the Case.*  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable.

11.      *Use of Cash Collateral*.  The Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties, but solely for the purposes set forth in this Final Order and in accordance with the DIP Budget (subject to permitted variances as set forth in this Final Order and the DIP Facility Documents) including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in this Final Order, from the date of this Final Order through and including the date of termination of the DIP Credit Agreement.

Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

12.    *Section 507(b) Reservation.*  Subject to the Carve-Out and the Adequate Protection Superpriority Claim, nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

13.    *Insurance.*  At all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.

14.    *Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition Secured Parties.*  Subject to the Carve-Out, notwithstanding any other provision in this Final Order or the DIP Facility Documents to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection at and following the Final Hearing; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Secured Parties granted under this Final Order and the DIP Facility Documents; (b) any of the rights of the DIP Secured Parties or the

27

Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Secured Parties or the Prepetition Secured Parties to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Prepetition Secured Parties. The delay in or failure of the DIP Secured Parties and/or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Prepetition Secured Parties' rights and remedies.

15. *Debtors' Reservation of Rights*. The entry of this Final Order and the grant of adequate protection to the Prepetition Secured Parties pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of an Event of Default, seek authority to use the Prepetition Collateral, including Cash Collateral, without the consent of the Prepetition Secured Parties, and the Prepetition Secured Parties reserve all of their respective rights with respect to contesting any such motion or request by the Debtors or any other person; provided that the fees and expenses incurred by the Debtors in connection with seeking such authority shall, only to the extent the Carve-Out Trigger Notice has been delivered to the Debtors as set forth in Paragraph 11 herein, reduce the amount of the Post-Carve Out Trigger Notice Cap

16. *Remedies Upon the Termination Date.* The Debtors shall immediately provide notice to counsel to the DIP Agent, counsel to the DIP Lenders and the Prepetition Secured Parties, and counsel to any Committee appointed in these Chapter 11 Cases, of the occurrence of any Event

of Default.  Upon the occurrence of an Event of Default following the giving of not less than three

(3) business days' advance written notice (the "Enforcement Notice," and such period, the "Notice

Period"), which may be by email, to counsel to the Debtors, the Prepetition Secured Parties, and

counsel to any Committee appointed in these Chapter 11 Cases, subject to the Carve-Out, the

Debtors' ability to use Cash Collateral hereunder shall terminate, the DIP Obligations shall become

due and payable, and the DIP Agent (at the direction of the Required DIP Lenders) and the DIP

Lenders (to the extent provided for in the DIP Facility Documents) may exercise any rights and

remedies against the DIP Collateral available to them under this Final Order, the DIP Facility

Documents, and applicable non-bankruptcy law, including, without limitation, terminating all

commitments to extend credit under the DIP Facility.  The only permissible basis for the Debtors,

any Committee appointed in these Chapter 11 Cases, or any other party to contest, challenge, or

object to an Enforcement Notice shall be solely with respect to the validity of the Event of Default

giving rise to such Enforcement Notice (i.e., whether such Event of Default validly occurred and

has not been cured or waived in accordance with this Final Order).  The automatic stay pursuant

to Bankruptcy Code section 362 shall be automatically terminated with respect to the DIP Agent

at the end of the Notice Period, without further notice or order of the Court, unless the DIP Agent

(at the direction of the Required DIP Lenders) elects otherwise in a written notice, which may be

by email, to the Debtors, the Prepetition Secured Parties, counsel to any Committee appointed in

these Chapter 11 Cases, and the DIP Agent (at the direction of the Required DIP Lenders) shall,

subject to the Carve-Out, be permitted to exercise all rights and remedies set forth herein and in

the DIP Facility Documents, as applicable, and as otherwise available at law against the DIP

Collateral, without any further order of or application or motion to the Court, and without

restriction or restraint by any stay under Bankruptcy Code sections 362 or 105, or otherwise,

against the enforcement of the liens and security interests in the DIP Collateral, or any other rights and remedies granted to the DIP Agent or the DIP Lenders with respect thereto pursuant to the DIP Facility Documents or this Final Order.

17.    *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Agent or the Required DIP Lenders to exercise rights and remedies under this Final Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

18.    *Perfection of the DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the DIP Agent or the Prepetition Agent shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Order.  If the DIP Agent or the Prepetition Agent (at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or the Prepetition Agent (at the direction of the applicable required lenders), and the automatic stay shall be modified to allow such filings.

(b)      A certified copy of this Final Order may, at the direction of the applicable required lenders, be filed with or recorded in filing or recording offices by the DIP Agent or the Prepetition Agent in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; provided, however, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Final Order.

(c)      Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law.  Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Final Order, subject to applicable law.

19.    *Preservation of Rights Granted Under this Final Order.*

(a)      Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, the Prepetition Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents or this Final Order, or otherwise seek to exercise or enforce any rights or

remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in Paragraph 18 herein.

(b)    Other than as set forth in this Final Order, neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and neither the DIP Liens nor the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

(c)    In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in Bankruptcy Code section 364(e).

(d)    Unless and until all DIP Obligations, Prepetition Obligations, and Adequate Protection Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Facility Documents or, if not provided for therein, with the prior written consent of the DIP

Agent, the Required DIP Lenders, and the Prepetition Agent (x) any modification, stay, vacatur, or amendment of this Final Order or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a) or 507(b)) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the Prepetition Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Facility Documents, any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or the Prepetition Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Facility Documents and this Final Order; (iv) except as set forth in the DIP Facility Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Chapter 11 Cases; (vi) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(e)     Notwithstanding any order dismissing any of the Chapter 11 Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash (and such DIP Liens,

DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(f)     Except as expressly provided in this Final Order or in the DIP Facility Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Facility Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to Bankruptcy Code section 363(b), or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Facility Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the

provisions of this Final Order shall continue in full force and effect until the DIP
Obligations and the Adequate Protection Obligations are indefeasibly paid in full, in cash
(or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the
Required DIP Lenders and the DIP Agent).

20. *Expenses and Indemnification.*

(a)    The Debtors are hereby authorized and directed to pay, in accordance with
this Final Order, the principal, interest, fees, payments, expenses, and other amounts
described in the DIP Facility Documents as such amounts become due and without need to
obtain further Court approval, including, without limitation, backstop, closing,
arrangement or commitment fees (including all fees and other amounts owed to the DIP
Lenders), administrative agent's fees and collateral agent's fees (including all fees and
other amounts owed to the DIP Agent), the reasonable fees and disbursements of counsel
and other professionals to the extent set forth in paragraph 2(d)(iii) and 6(c) of this Final
Order, whether or not such fees arose before or after the Petition Date, all to the extent
provided in this Final Order or the DIP Facility Documents.  Notwithstanding the
foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined
in the DIP Facility Documents) all reasonable and documented fees, costs, and expenses,
including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, and the
Prepetition Secured Lenders, incurred on or prior to such date without the need for any
professional engaged by the DIP Lenders, the DIP Agent, or the Prepetition Secured
Lenders to first deliver a copy of its invoice as provided for herein.

(b)    The Debtors shall be jointly and severally obligated to pay all fees and
expenses described above, which obligations shall constitute the DIP Obligations.  The

Debtors shall pay the professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 2(d)(iii) and 6(c) of this Final Order (collectively, the "Lender Professionals" and each a "Lender Professional") no later than five (5) business days (the "Review Period') after the receipt by counsel for the Debtors, any Committee, or the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law, provided that, upon the request of the U.S. Trustee prior to the expiration of the Review Period, the applicable Lender Professional shall provide more detailed support of the Invoiced Fees to the U.S. Trustee on a confidential basis.  The Debtors, any Committee, or the U.S. Trustees may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any Committee that may be appointed in these Chapter 11 Cases, or the U.S. Trustee

notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)     In addition, the Debtors will indemnify the DIP Lenders, the DIP Agent, and their respective affiliates, successors and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility; provided that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence, fraud, or willful misconduct of such person (or their related persons). No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence, fraud, or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

21.     *Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral.*
Notwithstanding anything to the contrary set forth in this Final Order, none of the DIP Facility,
the DIP Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve-Out or
proceeds thereof may be used: (a) to investigate (including by way of examinations or discovery
proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or
prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion,
objection, defense, adversary proceeding or other litigation of any type (i) against any of the DIP
Secured Parties or the Prepetition Secured Parties (each in their capacities as such), and each of
their respective affiliates, officers, directors, employees, agents, representatives, attorneys,
consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction,
occurrence, omission, action, or other matter (including formal discovery proceedings in
anticipation thereof), including, without limitation, any so-called "lender liability" claims and
causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured
Parties or the Prepetition Secured Parties (each in their capacities as such) under the DIP Facility
Documents, the Prepetition Loan Documents, or this Final Order, including, without limitation,
for the payment of any services rendered by the professionals retained by the Debtors or any
Committee appointed in these Chapter 11 Cases in connection with the assertion of or joinder in
any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection,
defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the
result of which would be to obtain, any order, judgment, determination, declaration, or similar
relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured
Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief
against any of the DIP Secured Parties or the Prepetition Parties related to the DIP Obligations or

the Prepetition Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition Obligations, or the DIP Agent's, the DIP Lenders', and the Prepetition Secured Parties' liens or security interests in the DIP Collateral or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties, or the DIP Agent's, the DIP Lenders', the Prepetition Lien Parties' respective liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition Lien Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions (as defined herein) related to the DIP Obligations, the DIP Liens, the Prepetition Obligations, or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Obligations or the Prepetition Liens, provided that no more than $50,000 of the proceeds of the DIP Facility, the DIP Collateral or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by any Committee appointed in these Chapter 11 Cases,

if appointed, solely to investigate, within the Challenge Period (as defined below), the claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations.

22.    *Effect of Stipulations on Third Parties*.

(a)    The Debtors' acknowledgments, stipulations, admissions, waivers, and releases set forth in this Final Order shall be binding on the Debtors, their estates, and their respective representatives, successors and assigns, and all parties in interest in these Chapter 11 Cases, including, without limitation, any Committee appointed in these Chapter 11 Cases, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "<u>Trustee</u>"), unless (a) such party, in each case, obtains requisite standing, and has duly filed an adversary proceeding or contested matter, as applicable (each, a "<u>Challenge</u>"), challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens, the Prepetition Obligations, or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, the "<u>Claims and Defenses</u>") against the Prepetition Agent or the other Prepetition Secured Parties in connection with any matter related to the Prepetition Collateral, the Prepetition Liens, or the Prepetition Obligations by no later than the earlier of (i) the date that is two (2) business days before the date of the hearing scheduled to consider confirmation of any chapter 11 plan of reorganization for the Debtors or (ii) (x) with respect to any Committee, the date that is sixty (60) days after appointment of such Committee or (y) with respect to other parties in interest, the date that is seventy-five (75)

days after the entry of the Final Order (the time period established by the earlier of the foregoing clauses (i) and (ii), the "Challenge Period"); provided that, in the event that, prior to the expiration of the Challenge Period, (x) these Chapter 11 Cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these Chapter 11 Cases, then, in each such case, the Challenge Period shall be extended for a period of 60 days solely with respect to any such trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any Challenge. If no such Challenge is timely filed prior to the expiration of the Challenge Period, without further order of this Court (x) the Prepetition Obligations shall constitute allowed secured claims (subject to section 506(a)(1) of the Bankruptcy Code as to the value of the Collateral), not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases, if any; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, and of the priority specified in Paragraph E(b), not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (z) the Prepetition Obligations, the Prepetition Liens on the Prepetition Collateral, and the Prepetition Secured Parties shall not be subject to any other or further

challenge, and any party in interest shall be forever enjoined and barred from seeking to

exercise the rights of the Debtors' estates or taking any such action, including any successor

thereto (including any estate representative or a Trustee, regardless of whether such Trustee

is appointed or elected prior to or following the expiration of the Challenge Period).  If any

such Challenge is timely filed prior to the expiration of the Challenge Period, (a) the

stipulations and admissions contained in this Final Order shall nonetheless remain binding

and preclusive on the Committee (if any) and any other party in these cases, including any

Trustee, except as to any stipulations or admissions that are (1) specifically and expressly

challenged in such Challenge and (2) invalidated or modified as set forth in a final, non-

appealable order of a court of competent jurisdiction and (b) any Claims and Defenses not

brought in such Challenge shall be forever barred; provided that if and to the extent any

Challenges to a particular stipulation or admission are withdrawn, denied or overruled by

a final non-appealable order, such stipulation also shall be binding on the Debtors' estates

and all parties in interest.

> (b)    Nothing in this Final Order vests or confers on any person (as defined in the
Bankruptcy Code), including, without limitation, any Committee appointed in the Chapter
11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or
their estates, including, without limitation, any challenge (including a Challenge) with
respect to the Prepetition Credit Documents, the Prepetition Liens or the Prepetition
Obligations.

23.    *Release*.  Subject to the rights and limitations set forth in Paragraph 22 of this Final

Order, and effective upon entry of this Final Order, each of the Debtors and the Debtors' estates,

on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall

to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Parties, and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations, the DIP Liens, the DIP Facility Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Credit Documents, as applicable, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Parties; provided that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Facility Documents.

24.    *Credit Bidding*.  The DIP Agent (at the direction of the Required DIP Lenders), and the Prepetition Agent (at the direction of the required lenders as set forth in the Prepetition Credit

Agreement), shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral, including, without limitation, sales occurring pursuant to Bankruptcy Code section 363 or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii); _provided_ that, prior to the expiration of the Challenge Period and the determination or other final resolution of any properly instituted Challenge, the right to object to any credit bid put forth by the Prepetition Secured Lenders is hereby preserved.

25.    _Conditions Precedent_.  No DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Facility Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Facility Documents have been satisfied in full or waived in accordance with such DIP Facility Documents.

26.    _Binding Effect; Successors and Assigns_.  The DIP Facility Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee appointed in these Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, and the applicable Prepetition Secured Parties, _provided_ that, except to the extent expressly set forth in this Final Order (including

44

with respect to the Carve-Out), the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Facility Documents, the DIP Secured Parties, and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

27.    *Limitation of Liability*.  In determining to make any loan under the DIP Facility Documents, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Facility Documents, the DIP Secured Parties, and the Prepetition Secured Parties shall not solely by reason thereof be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final Order or in the DIP Facility Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

28.    *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct or indirect, third party, or incidental beneficiary.

45

29.    *Retention of Jurisdiction*.  The Court shall have and retain exclusive jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order, including with respect to any and all disputes or matters under, arising out of, or in connection with either the DIP Loans or the DIP Facility Documents.

30.    *No Requirement to File Claim for DIP Obligations*.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Facility Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Facility Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Facility Documents, this Final Order, or applicable law.

31.    *No Requirement to File Claim for Prepetition Obligations*.  Provided that the Plan of Reorganization is confirmed and is consummated, then notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the Prepetition Agent nor any

Prepetition Secured Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Credit Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition Agent's or any Prepetition Secured Lender's rights, remedies, powers, or privileges under any of the Prepetition Credit Documents, this Final Order, or applicable law. Notwithstanding anything to the contrary contained in this Paragraph 31, if the Plan of Reorganization is not confirmed or does not go effective, then this Paragraph 31 shall not relieve the Prepetition Agent or any Prepetition Secured Lender from filing a proof of claim; provided that nothing herein shall prevent the Prepetition Agent or any Prepetition Secured Lender from entering into a stipulation approved by the Court that would relieve the Prepetition Agent or any Prepetition Secured Lender from any obligation to file any proof of claim described in this Paragraph 31.

32.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.


Dated: May 5, 2020
        White Plains, New York

                                    */s/ Robert D. Drain*
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE